Filed 5/8/14  American Nurses Assn. v. Torlakson CA3
Opinion following remand from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| AMERICAN NURSES ASSOCIATION et al., | C061150 |
| Plaintiffs and Respondents, | (Super. Ct. No. 07AS04631) |
| v. | |
| TOM TORLAKSON, as Superintendent, etc., et al., | |
| Defendants and Appellants; | |
| AMERICAN DIABETES ASSOCIATION, | |
| Intervener and Appellant. | |

This case returns to us on remand from the California Supreme Court.  The primary issue in the case originally was whether California law allows designated "voluntary school employees," who are not licensed nurses, to administer insulin to certain diabetic students.  In a 2007 legal advisory, the State Department of Education (the Department) indicated such personnel were included in the categories of persons

1

who could administer insulin to diabetic students. The American Nurses Association and other trade organizations representing registered and school nurses (collectively Nurses) challenged this advice as condoning the unauthorized practice of nursing. They further argued this portion of the 2007 Legal Advisory was a regulation enacted in violation of the Administrative Procedures Act (Gov. Code, § 11340 et seq.) (APA).

In *American Nurses Assn. v. Torlakson* (2013) 57 Cal.4th 570 at page 575 (*American Nurses*), our Supreme Court held that "California law expressly permits trained, unlicensed school personnel to administer prescription medications such as insulin in accordance with the written statements of a student's treating physician and parents (Ed. Code, §§ 49423, 49423.6; Cal. Code Regs., tit. 5, §§ 600, 604, subd. (b)) and expressly exempts persons who thus carry out physicians' medical orders from laws prohibiting the unauthorized practice of nursing (Bus. & Prof. Code, § 2727, subd. (e))." This opinion "authoritatively resolves the dispute independently of the 2007 Legal Advisory, based on the relevant provisions of the Education Code and its implementing regulations." (*American Nurses, supra,* 57 Cal.4th at p. 591.) The court thus found it unnecessary to reach the issue of whether the legal advisory violated the APA. "Our decision leaves the Department free to revise the Legal Advisory to reflect California law as we have interpreted it, and leaves the parties and the lower courts free to identify and resolve, if necessary, any issues that may remain concerning APA compliance." (*Ibid.*) The court remanded the case to us "for further proceedings in accordance with the views set forth herein." (*Id.* at p. 592.)

In supplemental briefing following remand, intervenor American Diabetes Association (Association) argues the trial court's judgment and writ of mandate should be reversed. Because the contested portion of the 2007 Legal Advisory was consistent with substantive California law, the Association argues, there is no APA defense. The Department and the State Superintendent of Public Instruction (Superintendent) joined

this supplemental brief. In response, Nurses argue the 2007 Legal Advisory is void because it was a regulation and failed to comply with the APA.

As we explain, the contested portion of the 2007 Legal Advisory was a regulation and it was enacted in violation of the APA. However, since *American Nurses* held the 2007 Legal Advisory's interpretation was the correct interpretation of California law, we reverse the portion of the judgment granting a writ of mandate commanding the Department and the Superintendent to refrain from implementing or enforcing the contested provisions of the 2007 Legal Advisory.

## BACKGROUND

In October 2005, the parents of several diabetic students, together with the Association, filed a class action in federal court against the Department and others, alleging that certain California public schools had failed to meet their obligations to diabetic students under federal law. (*K.C. et al. v. O'Connell* (N.D.Cal., No. C-05-4077MMC).) In 2007, the parties reached a settlement agreement. Under that agreement, the Department issued the 2007 Legal Advisory on the Rights of Students with Diabetes in California's K-12 Public Schools (2007 Legal Advisory). (*American Nurses, supra,* 57 Cal.4th at p. 577.)

The 2007 Legal Advisory was directed to "all California school districts and charter schools" to remind them "of the following important legal rights involving students with diabetes who have been determined to be eligible for services." The conclusion of the 2007 Legal Advisory sets forth in a checklist the various categories of persons who may administer insulin in California's schools pursuant to an individualized education program (IEP) or a Section 504 Plan under the Rehabilitation Act of 1973 (29 U.S.C. § 794). That checklist provides as follows:

"Business and Professions Code section 2725[, subdivision] (b)(2) and the California Code of Regulations, Title 5, section 604 authorize the following types of

persons to administer insulin in California's public schools pursuant to a Section 504 Plan or an IEP:

"1. self administration, with authorization of the student's licensed health care provide[r] and parent/guardian;

"2. school nurse or school physician employed by the LEA [local education agency];

"3. appropriately licensed school employee ( i.e., a registered nurse or a licensed vocational nurse) who is supervised by a school physician, school nurse, or other appropriate individual;

"4. contracted registered nurse or licensed vocational nurse from a private agency or registry, or by contract with a public health nurse employed by the local county health department;

"5. parent/guardian who so elect;

"6. parent/guardian designee, if parent/guardian so elects, who shall be a volunteer who is not an employee of the LEA; and

"7. unlicensed voluntary school employee with appropriate training, but only in emergencies as defined by Section 2727[, subdivision](d) of the Business and Professions Code (epidemics or public disasters).

"When no expressly authorized person is available under categories 2–4, supra, federal law—the Section 504 Plan or the IEP—must still be honored and implemented. Thus, a category # 8 is available under federal law:

"8. voluntary school employee who is unlicensed but who has been adequately trained to administer insulin pursuant to the student's treating physician's orders as required by the Section 504 Plan or the IEP." (Fn. omitted.)

Nurses brought a petition for a writ of mandate and a complaint for declaratory and injunctive relief, challenging the eighth category of the 2007 Legal Advisory. They sought a writ of mandate setting aside, vacating, and invalidating "standard #8" of the 2007 Legal Advisory, and enjoining defendants from taking any action in conjunction with that standard. They also sought a declaration that issuance of that standard violated state law, including the APA, the Nursing Practices Act, and the California Constitution.

4

The trial court granted judgment for petitioners. It issued a peremptory writ of mandate that commanded the Department and the Superintendent to refrain from implementing or enforcing the portion of the 2007 Legal Advisory following category 7 of the checklist, and to remove that portion of the 2007 Legal Advisory.

We affirmed the trial court's judgment and issuance of the peremptory writ of mandate. (*American Nurses Assn. v. O'Connell* (2010) 185 Cal.App.4th 393, revd. and cause remanded sub. opn. *American Nurses*, *supra*, 57 Cal.4th 570.)

Our Supreme Court reversed. (*American Nurses*, *supra*, 57 Cal.4th at p. 592.) The court first determined that Education Code section 49423 and its implementing regulations "plainly establish" "that unlicensed school personnel may administer prescription medications." (*Id*. at p. 581.) The court then considered whether the Nursing Practices Act (Bus. & Prof., § 2700 et seq.) (NPA) prohibited unlicensed persons from administering insulin and found the medical-orders exception applied. The medical-orders exception provides that the NPA does not prohibit: "The performance by any person of such duties as required in the physical care of a patient and/or carrying out medical orders prescribed by a licensed physician; provided, such person shall not in any way assume to practice as a professional, registered, graduate or trained nurse." (Bus. & Prof. Code, § 2727, subd. (e).) In determining this exception applied, the court interpreted the phrase "assume to practice as a . . . registered . . . nurse." The court explained, "To 'assume' to do a thing has two possible meanings in the present context. It might mean to 'undertake' to do a thing, or '[t]o take [a thing] upon oneself'—in effect simply to do it. (Oxford English Dict. Online (2013) definition II.4.a; see Webster's 3d New Internat. Dict. (2002) p. 133, definition 2.) Alternatively, to 'assume' might mean '[t]o put forth claims or pretensions,' to do a thing 'in appearance only, . . . to pretend, simulate, feign.' (Oxford English Dict. Online, *supra*, definition III.8, 9; see Webster's 3d New Internat. Dict., *supra*, at p. 133, definition 4.)" (*American Nurses*, *supra*, at p. 584.) The court found "[t]he statute's language, broader statutory context and

5

interpretive history all point" to the second definition; the first definition would "render the exemption entirely meaningless." (*Id.* at pp. 583-584.)

Thus the court reversed our decision and "remanded for further proceedings in accordance with the views set forth herein." (*American Nurses*, *supra*, 57 Cal.4th at p. 592.)

## DISCUSSION

On remand, the Association contends we should reverse the trial court's judgment and writ of mandate. The Association contends the contested portion of the 2007 Legal Advisory is not a regulation, and therefore the APA does not apply. The Department and the Superintendent join in this argument.

I

*The Law*

The APA provides that "[n]o state agency shall issue, utilize, enforce, or attempt to enforce . . . a regulation" without complying with the APA's notice and comment provisions. (Gov. Code, § 11340.5, subd. (a).) A regulation is defined broadly to mean "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." (Gov. Code, § 11342.600.)

"A regulation subject to the APA thus has two principal identifying characteristics. [Citation.] First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must 'implement, interpret, or make specific the law enforced or administered by [the agency], or . . . govern [the agency's] procedure.' [Citation.]" (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571.)

6

"As to the first test, a regulation subject to the APA has been construed to apply 'to all generally applicable administrative interpretations of a statute,' presumptively including the advisory, whether or not the interpretation is in the form of a regulation and whether or not it is a correct reading of the statute. [Citations.]" (*California Grocers Assn. v. Department of Alcoholic Beverage Control* (2013) 219 Cal.App.4th 1065, 1073-1074 (*California Grocers*).)

As to the second test, "the APA's procedural requirements do not apply where an agency's interpretation of a statute represents 'the only legally tenable interpretation of a provision of law.' (Gov. Code, § 11340.9, subd. (f).)" (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 336 (*Morning Star*). This exception applies "only in situations where the law 'can reasonably be read only one way' [citation], such that the agency's actions or decisions in applying the law are essentially rote, ministerial, or otherwise patently compelled by, or repetitive of, the statute's plain language." (*Id*. at pp. 336-337.) "As the APA establishes that 'interpretations' typically constitute regulations, it cannot be the case that *any* construction, if ultimately deemed meritorious after a close and searching review of the applicable statutes, falls within the exception provided for the sole 'legally tenable' understanding of the law. Were this the case, the exception would swallow the rule." (*Id.* at p. 336.)

II

*Analysis*

The contested portion of the 2007 Legal Advisory, setting forth the eighth category of persons who may administer insulin to students in California's schools pursuant to an IEP or a Section 504 Plan, qualifies as a regulation subject to the APA. The 2007 Legal Advisory meets the first test of a regulation as a "standard of general application" by an agency "to implement, interpret, or make specific the law enforced or administered by it." (Gov. Code, § 11342.600.) While the advisory was issued as part of a settlement, it was intended to apply to "all California school districts and charter

7

schools" to remind them "of the following important legal rights involving students with diabetes who have been determined to be eligible for services." Thus, the Department intended the advisory "to apply generally, rather than in a specific case." (*Morning Star, supra,* 38 Cal.4th at p. 333.)

The Association contends the 2007 Legal Advisory is not a regulation because it is not an interpretation of the law; instead, "it merely constitutes a statement by the Department of its understanding of the law and intent to comply with it." The Association relies on *Excelsior College v. Board of Registered Nursing* (2006) 136 Cal.App.4th 1218 (*Excelsior College*).

For 20 years, the Board of Registered Nursing (the Board) had determined the New York-based distance learning nursing program of Excelsior College was equivalent to the minimum requirements of an accredited California program, as required by Business and Professions Code section 2736. (*Excelsior College, supra,* 136 Cal.App.4th at p. 1227.) After receiving correspondence expressing concern about the skill level of new graduates from some nursing schools, the Board determined Excelsior's program had insufficient clinical practice requirements and issued a decision that " 'Excelsior College graduates, like other out-of-state graduates, must meet the requirements set forth in California Business and Professions Code Section 2736(a)(2) . . . .' " (*Ibid.*) Excelsior College challenged this decision as an illegal underground regulation enacted without compliance with the APA. This court rejected that argument. "The Board's action of February 6, 2004, merely confirmed that Excelsior graduates would be required to comply with section 2736. The Board has not created an underground regulation merely by enforcing *the actual language* of the statute." (*Id.* at p. 1239, emphasis added.)

*Excelsior College* is distinguishable. By its own terms, the 2007 Legal Advisory did not seek to enforce the *actual language* of the statute, but to *interpret* it as necessary to comply with federal law. As such, the contested portion of the advisory met the first test of a regulation.

Next, the Association contends the contested portion of the 2007 Legal Advisory was not subject to the APA because it embodied the " 'only tenable legal interpretation' " of Education Code section 49423 and the NPA, the interpretation adopted by our Supreme Court in *Nurses Association*. We disagree; "[W]hether the Department has adopted the sole 'legally tenable' reading of the statutes represents a different question than whether its interpretation is ultimately correct." (*Morning Star, supra*, 38 Cal.4th at p. 336.)

As set forth *ante*, in determining that unlicensed school personnel are authorized to administer insulin to students, our Supreme Court adopted one of "two possible meanings" of the term " 'assume' " in the NPA. (*American Nurses, supra,* 57 Cal.4th at p. 584.) Consequently, since the proper interpretation of the law required choosing between two *possible* meanings, the interpretation set forth in the 2007 Legal Advisory, subsequently sanctioned by the California Supreme Court, was not "rote, ministerial, or otherwise patently compelled by, or repetitive of, the statute's plain language," as required for the only tenable legal interpretation exception. (*Morning Star, supra,* 38 Cal.4th at p. 337.) Indeed, both the trial court and this court adopted a different interpretation. That our Supreme Court ultimately accepted the interpretation advanced in the 2007 Legal Advisory does not make that interpretation the only legally tenable one. The test is not whether the interpretation, "after a close and searching review of the applicable statutes," is meritorious. (*Id*. at p. 336.)

Thus the contested portion of the 2007 Legal Advisory qualifies as a regulation subject to the APA because it meets both tests of a regulation. Defendants and the Association do not dispute that the Department failed to comply with the APA in issuing the 2007 Legal Advisory. The failure to comply with the notice and comment procedures of the APA voids the regulation. (*California Grocers, supra,* 219 Cal.App.4th at p. 1073.) Our Supreme Court, however, has determined that the contested portion of the 2007 Legal Advisory correctly states the law in California. Consequently, we must

9

determine what effect the failure to comply with the APA has on the judgment and writ of mandate issued by the trial court in this case.

III

*Effect on Judgment and Writ of Mandate*

The trial court's judgment has two parts. The first part declares the contested portion of the 2007 Legal Advisory invalid. The trial court gave two reasons for this invalidity: (1) the respondents (the Department and the Superintendent) had no authority to enlarge the group of persons who may administer insulin under state law; and (2) respondents failed to comply with the rule-making procedures of the APA. The first reason is incorrect, as the California Supreme Court has determined that California law allows school personnel who are not licensed health care professionals to administer insulin. (*American Nurses, supra,* 57 Cal.4th at p. 591.) The second reason, however, is correct. The trial court's judgment is affirmed to the extent it declares the contested portion of the 2007 Legal Advisory void as an illegal regulation.

The second part of the judgment issues a peremptory writ of mandate requiring respondents to refrain from implementing or enforcing the contested provisions of the 2007 Legal Advisory and to delete those portions of the advisory. The judgment and the issuance of a writ of mandate are reversed to the extent that these orders prohibit respondents from permitting unlicensed school personnel from administering insulin to diabetic students. Such persons are allowed by California law to administer insulin to diabetic students, as our Supreme Court "authoritatively resolve[d] the dispute" in deciding *American Nurses.* (*American Nurses, supra,* 57 Cal.4th at p. 591.) We note our Supreme Court has held that the Department is "free to revise the Legal Advisory to reflect California law as we have interpreted it." (*Ibid.*)

**DISPOSITION**

The judgment and issuance of a writ of peremptory mandate is reversed to the extent it commands the Department and the State Superintendent of Public Instruction to

10

refrain from implementing or enforcing the contested portion of the 2007 Legal Advisory.  In all other respects, the judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3).)


                                                        _____DUARTE_____, J.


We concur:


_____BUTZ_____, Acting P. J.


_____HOCH_____, J.