Filed 9/22/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SANTA CLARITA ORGANIZATION FOR PLANNING AND THE ENVIRONMENT (SCOPE),<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>KEITH ABERCROMBIE,<br><br>  Defendant and Respondent. | B256976<br><br>(Los Angeles County<br>Super. Ct. No. BS141673)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:\*

It is ordered that the opinion filed herein on September 10, 2015, be modified as follows:

1.  On page 8, the first full paragraph, line 4, after the word "appeal." add as footnote 3,

the following footnote, which will require renumbering of all subsequent footnotes:

> **3**     This analysis of jurisdiction pertains to SCOPE's conflict of interest claim against Abercrombie at issue in this appeal, not to claims that are at issue in the pending appeal in *SCOPE v. Castaic Lake Water Agency et al.*, No. B264284.

There is no change in the judgment.

**CERTIFIED FOR PUBLICATION.**

---

\*      ASHMANN-GERST, Acting P.J.,      CHAVEZ, J.      HOFFSTADT, J.

Filed 9/10/15 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SANTA CLARITA ORGANIZATION FOR PLANNING AND THE ENVIRONMENT (SCOPE),<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KEITH ABERCROMBIE,<br><br>Defendant and Respondent. | B256976<br><br>(Los Angeles County<br>Super. Ct. No. BS141673) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Luis A. Lavin, Judge. Affirmed.

Advocates for the Environment, Dean Wallraff, for Plaintiff and Appellant.

Richards Watson & Gershon, James L. Markman, T. Peter Pierce, Patrick D. Skahan, for Defendant and Respondent.

\* \* \* \* \* \*

The Castaic Lake Water Agency (Agency) acquired the Valencia Water Company (Valencia) through its power of eminent domain. Petitioner Santa Clarita Organization for Planning and the Environment (SCOPE) sued, claiming, among other things, that the acquisition was void under Government Code section 1090[1] and the Political Reform Act (PRA) (§ 81000 et seq.) because one of the Agency's ten directors—respondent Keith Abercrombie (Abercrombie)—was Valencia's general manager at the time the acquisition was being negotiated. The trial court rejected SCOPE's conflict of interest claims on the pleadings, concluding that the Agency's enabling legislation (Stats. 1986, ch. 832, § 5, p. 2843, Deering's Ann. Wat.—Uncod. Acts (2008 ed.) Act 130, § 15.2, subd. (d) (Act))[2] authorized a Valencia employee like Abercrombie to serve on the Agency's board of directors once his status as an employee was disclosed; this provision, the trial court reasoned, excepted Abercrombie from the conflict of interest statutes— expressly from section 1090 and implicitly from the PRA.

This appeal presents three questions: (1) does the express exception to section 1090 in the Agency's enabling legislation apply to a contract to acquire a water company; (2) does the express exception to section 1090 also implicitly repeal (and thereby amend) the PRA's applicability to such an acquisition; and (3) did the Legislature comply with the special requirements set forth in section 81012 for amending the PRA, which was originally enacted by voter initiative? We conclude that the answer to all three questions is "yes," and affirm the trial court's dismissal of SCOPE's conflict of interest claim.

---

[1]     All further statutory references are to the Government Code unless otherwise indicated.

[2]     Uncodified water agency enactments are collected in appendices of the annotated Water Codes, and are assigned numerical designations by the publisher. All further references to section 15.2, subdivision (d), the 1986 amendment to the Castaic Lake Water Agency Law, are to Deering's Annotated Water Code—Uncodified Acts, Act 130.

## FACTS AND PROCEDURAL HISTORY

Because we are reviewing the trial court's grant of judgment on the pleadings, the facts set forth below are drawn from the operative petition and complaint, and other judicially noticed facts. (*People ex rel. Harris v. Pac Anchor Transp., Inc.* (2014) 59 Cal.4th 772, 777 (*Pac Anchor*).)

The Agency is a legislatively created public agency. (Stats. 1986, ch. 832, § 5, p. 2843, Deering's Ann. Wat.—Uncod. Acts (2008 ed.) Act 130, §§ 1, 2.) Its primary function is to supply water, as a wholesaler, to the three retail water distributors—called "purveyors"—within the geographical boundaries of the upper Santa Clarita Valley. Those distributors are Newhall County Water District, the Santa Clarita Water Division of the Agency, and Valencia. (*Id.*, §§ 1, 2, 4.8, 15.) The Agency can also directly supply water as a retailer in a subset of its territory. (*Id.*, §15, subd. (a)(1); *Klajic v. Castaic Lake Water Agency* (2004) 121 Cal.App.4th 5, 15.)

The Agency is governed by a 10-member board of directors, seven of whom are elected and three of whom are appointed. (Stats. 1986, ch. 832, § 5, p. 2843, Deering's Ann. Wat.—Uncod. Acts (2008 ed.) Act 130, §§ 5.1, 5.3.) Each of the three purveyors the Agency regulates is to nominate one of the appointed directors, and that nominee "may be a shareholder, director, officer, agent or employee of the nominating purveyor." (*Id.*, § 5.1, subd. (a)(2).) Valencia nominated Abercrombie to the Agency's board in 2010, and disclosed that he was then serving as Valencia's general manager.

In December 2012, the Agency's board of directors, by a nine-to-one vote, adopted a resolution authorizing the Agency to file an eminent domain lawsuit to acquire all of Valencia's common stock from Newhall Land and Farming Company, the owner of Valencia's stock at the time. Abercrombie did not participate in this vote, as he had resigned from the board approximately two weeks earlier. However, prior to resigning, Abercrombie participated in the "planning, preliminary discussions, negotiation and compromises" leading up to the acquisition. The Agency filed its eminent domain action the day after adopting the resolution, and within a week filed a settlement providing that

3

the Agency would acquire Valencia's stock for $73.8 million. The trial court in the condemnation action accepted the settlement and entered judgment.

In early 2013, SCOPE sued to set aside the Agency's acquisition of Valencia. SCOPE is a nonprofit group "concerned with the protection of the environment and the quality of life in the Santa Clarita Valley." In the operative First Amended Verified Petition for Writ of Mandate and Complaint, SCOPE sought injunctive and declaratory relief on five grounds: (1) inverse validation (under Code of Civil Procedure section 863); (2) a writ of mandate (under Code of Civil Procedure section 1085) on the ground that the Agency's board acted illegally and beyond its authority; (3) violation of the California Environmental Quality Act (under Public Resources Code section 21000 et seq.); (4) illegal expenditure of taxpayer funds (under Code of Civil Procedure section 526a); and (5) conflict of interest (under section 1090 and the PRA).

Abercrombie and the Agency moved for judgment on the pleadings as to the conflict of interest claim. The trial court granted the motion. The court ruled that section 1090's prohibition on a public official's "financial[] interest[] in any contract made by [him] in [his] official capacity" provided no basis to set aside the Agency's acquisition of Valencia because section 15.2, subdivision (d), of the Agency's enabling legislation expressly provided that an appointed director's financial interest in its purveyor did "not constitute a violation of Section 1090" or otherwise render the affected contract "void." (§ 15.2, subd. (d).) The court further noted that the PRA's mandate that a public official not "make" or "participate in making . . . governmental decision[s] in which he knows . . . he has a financial interest" (§ 87100) also provided no basis to void the acquisition. The court reasoned that (1) section 87100 must be read "in pari materia" with section 1090 because both statutes "address conflicts of interest in the context of public officials carrying out their official duties," and (2) the Legislature's decision in section 15.2, subdivision (d) to except the Agency's appointed directors from conflict of interest liability under the more specific provisions of section 1090 would be nullified if section 87100's more general prohibitions were applied, such that the Legislature must have intended section 15.2, subdivision (d), to authorize an appointed director's

4

participation in Agency contract-making under *both* section 1090 and the PRA. The court entered judgment for Abercrombie on this claim, the sole claim in which he was named.

SCOPE timely appealed.

## DISCUSSION

### *Jurisdiction*

As a threshold matter, Abercrombie argues that we must dismiss SCOPE's appeal because SCOPE's conflict of interest claim is, in actuality, an "inverse validation" claim under Code of Civil Procedure section 863 and because SCOPE did not comply with the shortened window for filing a notice of appeal that applies when appealing such claims. To evaluate this argument, we must "determine if the underlying [claim or action] was, in fact," a claim or action subject to the so-called "validation statutes." (*Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 27 (*Kaatz*); *California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1418-1419 (*California Commerce Casino*).) This is a question of law we review de novo. (E.g., *Castaneda v. Superior Court* (2015) 237 Cal.App.4th 1434, 1443.)

Code of Civil Procedure sections 860 through 870.5 set forth a procedure by which a public agency (in a so-called "validation" claim or action) or anyone else (in a so-called "inverse validation" or "reverse validation" claim or action) can file an in rem action to obtain an expedited but definitive ruling regarding the validity (or invalidity) of the public agency's action. (Code Civ. Proc., § 860 et seq.; *Planning & Conservation League v. Department of Water Resources* (1998) 17 Cal.4th 264, 266 (*Planning & Conservation League*) [noting that validation proceedings are "a set of accelerated in rem procedures for determining the validity of certain bonds, assessments and other agreements entered into by public agencies"]; *Kaatz*, *supra*, 143 Cal.App.4th at p. 19). If the validation statutes apply, the validation (or inverse validation) complaint must be filed within 60 days of the act to be challenged (Code Civ. Proc., §§ 860 [validation claims or actions], 863 [inverse validation claims or actions]); notice of the claim must be served on "all interested parties . . . by publication" (*id.*, § 861); the claim or action must

5

be given preference over other civil actions (*id.*, § 867); any appeal of the trial court's ruling must be noticed within 30 days of the notice of entry of judgment (*id.*, § 870, subd. (b)); and the judgment, if not appealed or once affirmed on appeal, "is forever binding and conclusive . . . against the agency and against all other persons" (*id.*, § 870, subd. (a)).

Whether the special procedures of the validation statutes apply in the first place is the trickier question. "The validation statutes . . . do not specify the matters to which they apply." (*California Commerce Casino*, *supra*, 146 Cal.App.4th at p. 1423; *Planning & Conservation League*, *supra*, 17 Cal.4th at p. 269; *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1165 (*McLeod*).) The validation statutes do not apply just because a claim or action seeks to challenge—and thereby, in the colloquial sense, to "invalidate"—an agency's action. (*Kaatz*, *supra*, 143 Cal.App.4th at p. 19 ["not all actions of a public agency are subject to validation"].) Instead, we must ascertain whether the Legislature has elsewhere declared the claim or action to be subject to the validation statutes. (Code Civ. Proc., § 860 [validation statute procedures apply to "any matter which *under any other law* is authorized to be determined pursuant to this chapter"], italics added.) In assessing whether a claim or action falls within the boundaries of a particular legislative declaration that the validation statutes apply, we assess whether "'the gravamen of a complaint and the nature of the right sued upon, rather than the form of the action or relief demanded . . .'" falls within the language of the declaration. (*McLeod*, at p. 1165, quoting *Embarcadero Mun. Improvement Dist. v. County of Santa Barbara* (2001) 88 Cal.App.4th 781, 789.)

Abercrombie does not point to any specific statute as a legislative declaration that SCOPE's conflict of interest claim is subject to the validation statutes. Because the conflict-of-interest claim is brought pursuant to sections 1092, subdivision (b) and 91003, neither of which are part of or subject to the validation statutes, SCOPE's conflict of interest claim does not appear to be subject to the validation statutes' shortened notice-of-appeal deadline.

6

Even if we were to consider SCOPE's complaint as a whole and look to the legislative declarations that SCOPE invokes as the basis for its first cause of action, inverse validation, these statutes do not reach SCOPE's conflict of interest claim or its action. SCOPE cites section 19 of the Act, section 16.1 of the Act, and Government Code section 53511. However, section 19 only declares the validation statutes applicable to actions "to determine the validity of any bonds, warrants, promissory notes, contracts or other evidences of indebtedness of the kinds authorized by subdivisions (h), (i), (o), (p), (r), or (s) of Section 15." (Stats. 1986, ch. 832, § 5, p. 2843, Deering's Ann. Wat.—Uncod. Acts (2008 ed.) Act 130, § 19.) Yet SCOPE's action challenges the Agency's exercise of its contracting and eminent domain powers under subdivisions (e) and (g) of section 15—subdivisions expressly *not* embraced by section 19. Section 16.1 subjects the Agency's "exercise [of] authority" to operate as a "retail water authority" under section 15.1 to "Division 12 . . . of the Water Code." (*Id.*, § 16.1.) Division 12 includes Water Code section 30066, which declares an action "to determine the validity of an assessment, or of warrants, *contracts*, obligations or evidences of indebtedness" subject to the validation statutes. (Wat. Code, § 30066, italics added.) Along the same lines, Government Code section 53511 declares, more broadly, that the validation statutes apply to "an action to determine the validity of [a local agency's] bonds, warrants, *contracts*, obligations or evidences of indebtedness." (Gov. Code, § 53511, subd. (a), italics added.) We need not decide whether, as SCOPE has alleged, the Agency's acquisition of Valencia converted it into a "retail water agency" under the Act section 15.1 (and thus subject to the validation procedures under section 16.1) because the Act section 16.1 and Government Code section 53511 use identical language and the California courts have read section 53511's reference to "contracts" "narrow[ly]" to reach only those contracts that "are in the nature of, or directly relate[d] to, a public agency's bonds, warrants or other evidences of indebtedness." (*Kaatz*, *supra*, 143 Cal.App.4th at pp. 37, 42; *Ontario v. Superior Court* (1970) 2 Cal.3d 335, 343-344 [concluding that the validation statutes' legislative history counsels in favor of a narrow construction of "contract" in Government Code section 53511]; accord, *Klajic v. Castaic*

7

*Lake Water Agency* (2001) 90 Cal.App.4th 987, 995, fn. 8 [noting that lawsuit attacking Agency's acquisition of a retail water agency, but not attacking financing of that acquisition, was not an action to determine the validity of a "contract"].)  SCOPE's action does not challenge the Agency's use of bonds, warrants or other evidences of indebtedness.

Because no statute declares SCOPE's conflict of interest claim to be subject to the validation statutes, those statutes' expedited requirement for noticing appeals does not apply.  SCOPE's notice of appeal was otherwise timely, and we have jurisdiction over its appeal.

*Merits*

SCOPE contends that the trial court erred in rejecting its argument that the Agency's acquisition of Valencia was void under sections 1090 and 87100.  We independently review a trial court's grant of judgment on the pleadings.  (*Pac Anchor*, *supra*, 59 Cal.4th at p. 777.)  We will separately consider the applicability of each conflict of interest statute.

I.      **Section 1090**

Section 1090 provides, in pertinent part, that "[m]embers of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity or by any body or board of which they are members."  (§ 1090, subd. (a).)  Designed in recognition of the "self-evident" "truism that a person cannot serve two masters simultaneously" (*People v. Honig* (1996) 48 Cal.App.4th 289, 314 (*Honig*); *Thomson v. Call* (1985) 38 Cal.3d 633, 637 (*Thomson*)), section 1090 prohibits, and renders "void from its inception" (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1073 (*Lexin*)), nearly all contracts made by a public official in which he has a financial interest.  (§ 1090.)  This prohibition applies regardless of whether the public official acted with fraudulent intent or in good faith; whether the contract is unfair or fair to the public; whether the official disclosed or hid the conflict of interest; whether the official personally participated in the making of the contract or abstained from the public agency's actions with respect to the contract; and

8

whether his financial interest in the contract is material or immaterial. (*Thomson*, at pp. 646, 649-650; *Honig*, at pp. 314, 323-324.) The only financial interests outside the reach of section 1090 are those that are "remote" within the meaning of section 1091 or "minimal" within the meaning of section 1091.5. (*Lexin*, at pp. 1073-1074; *Thomson*, at p. 648; §§ 1091, 1091.5; accord, *Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 818-819 [listing elements of section 1090 violation as (1) whether the official participated in making the contract in his official capacity, (2) whether the official had a cognizable financial interest in the contract, and (3) whether the cognizable interest falls within the exceptions under sections 1091 and 1091.5].)

"[W]here public officials on behalf of a public entity participate in making a contract with a second entity for which they work, the scenario poses at least the risk that the official will compromised by serving 'two masters.'" (*Lexin*, *supra*, 47 Cal.4th at p. 1075.) Because "the making of a contract '[encompasses] the planning, preliminary discussion [and] compromises . . that le[a]d up to the formal making of [a] contract,'" (*Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at p. 819, quoting *Honig*, *supra*, 48 Cal.App.4th at p. 315), the allegations that Abercrombie was involved in negotiating the Agency's condemnation of Valencia—Abercrombie's employer at the time—place the acquisition squarely within the ambit of section 1090.

The Agency's acquisition of Valencia would consequently be void if not for section 15.2, subdivision (d), of the Agency's enabling legislation. (§ 15.2, subd. (d).) That provision provides that "[t]he financial or other interest of any appointed director in any contract between a purveyor or successor in interest to a purveyor and the agency, or the fact that an appointed director may have an ownership interest in or hold the position of a shareholder, director, officer, agent, or employee of that purveyor or successor in interest to a purveyor, shall not constitute a violation of Section 1090 of the Government Code, nor shall that interest or fact render the contract void or make it avoidable under Section 1092 of the Government Code, at the instance of any party; provided that either or both the fact of the interest and the fact of the relationship as shareholder, possessor of other ownership interest, director, officer, agent, or employee, shall be disclosed to the

9

board of directors of the agency and noted in its official records, and thereafter the board shall authorize, approve, or ratify the contract by a vote of its membership sufficient for the purpose without counting the vote of that appointed director." (*Ibid.*)

Section 15.2, subdivision (d) applies by its terms to Abercrombie's involvement in the Agency's acquisition of Valencia. The acquisition involves a contract between the Agency and a "purveyor"—whether the purveyor is deemed to be Valencia (as the entity condemned) or to be Newhall Land and Farming Company (as the owner of Valencia's stock) because section 15.2, subdivision (d), also defines "purveyor" for its purposes as "a majority owner" of a purveyor such as Valencia. (§ 15.2, subd. (d).) Abercrombie disclosed his position as Valencia's general manager when he joined the Agency's board of directors in 2010. And the board voted nine-to-one to ratify the negotiations preceding the eminent domain litigation, and to authorize that litigation and its settlement; Abercrombie was no longer on the board at the time of those votes.

Conceding that section 15.2, subdivision (d), would appear "at first glance" to apply, SCOPE nevertheless argues that the legislative history behind that provision— enacted as Assembly Bill No. 3762 during the 1987-1988 Regular Session (AB 3762)— reveals the Legislature's intent to limit section 15.2, subdivision (d)'s exception to contracts involving "water resource plans"—not contracts through which the Agency acquires a purveyor. For support, SCOPE cites language in a letter from the Agency to Assembly Member Dominic L. Cortese and in a Background Information Request summary on AB 3762; both refer to AB 3762 as allowing an otherwise conflicted director to "enter into a contract in the development of a water resource plan."[3] This presents a question of statutory interpretation, one we approach independently. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)

We decline SCOPE's invitation to interpret section 15.2, subdivision (d) of the Act to exempt from Government Code section 1090 only those contracts involving "water

---

[3]   Like the trial court, we have taken judicial notice of the legislative history of AB 3762.

resource plans"; we do so for three reasons. First and foremost, the plain text of section 15.2, subdivision (d), reaches "*any* contract between a purveyor . . . and the agency." (§ 15.2, subd. (d), italics added.) In interpreting statutory language, we "begin with the plain, commonsense meaning of the language used by the Legislature"; if it is unambiguous, "the plain meaning controls." (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630.) We follow our Supreme Court's lead in concluding that "'"'any' means 'any.'"'" [Citation]." (*People v. Shabtay* (2006) 138 Cal.App.4th 1184, 1195 (conc. opn. of Turner, P.J.) [collecting Supreme Court authority on this point].) The Legislature's use of "any" in section 15.2, subdivision (d) forecloses SCOPE's argument that "any" means something less.

Second, even if we were to look beyond the statute's plain text, SCOPE's proffered interpretation is at odds with the structure of the Agency's decision-making and with other provisions of the Agency's enabling legislation. As noted above, the Agency's board of directors is to be partly composed of directors nominated by the very purveyors the Agency regulates and supplies with water. This structure is grounded in the Legislature's view that the participation of these purveyor-nominated and often purveyor-employed directors is "intended to represent and further the interest of the water industry within the boundaries of the agency, and that this representation . . . will ultimately serve the public interest." (Stats. 1986, ch. 832, § 5, p. 2843, Deering's Ann. Wat.—Uncod. Acts (2008 ed.) Act 130, § 5.3.) Limiting section 15.2, subdivision (d)'s exception to water resource plan contracts would ostensibly preclude the involvement of appointed directors for all other types of contracts, a result that would substantially undermine the Legislature's intended design. In fact, a different portion of the Agency's enabling legislation specifies that an appointed director nominated by a purveyor that is later acquired by the Agency must step down from the board soon after the acquisition (*Id.*, § 5.1, subd. (b)(1)); this seems to contemplate that such a director would remain part of the board until that time. SCOPE's view that appointed directors are only to be involved in water resource plan contracts would also render this provision superfluous, and we are reluctant to construe one statutory provision in a way that renders another

11

superfluous.  (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1173 ["We generally avoid interpretations that render any part of a statute superfluous"].)

Lastly, AB 3762's legislative history—when viewed in its totality—does not in any event support SCOPE's position that the Legislature meant section 15.2, subdivision (d), to be limited to water resource plan contracts.  Although the two snippets SCOPE points to refer to these types of contracts, neither snippet evinces any intent to *limit* section 15.2, subdivision (d) to such contracts.  To the contrary, other portions of AB 3762's legislative history summarize the bill to reach "*any* contract between a purveyor" and "contracts of a type which would normally be executed between a wholesale agency and its retail purveyor."  Nothing in this history indicates an intent to exclude the type of contractual acquisition at issue in this case.

For these reasons, the trial court correctly concluded that section 15.2, subdivision (d)'s exception applies to the Agency's acquisition of Valencia, and neither the Agency nor Abercrombie violated section 1090.

## II.     The Political Reform Act

In 1974, the voters passed Proposition 9 and thereby created the Political Reform Act (PRA), § 81000 et seq.  (*Consumers Union of United States, Inc. v. California Milk Producers Advisory Bd.* (1978) 82 Cal.App.3d 433, 436 (*Consumers Union*).)  Among its many provisions, section 87100 provides that "[n]o public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."  (§ 87100.)  "A public official has a financial interest in a decision . . . if it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on the official, a member of his or her immediate family" or one of five other statutorily enumerated interests.  (§ 87103.)  Taken together, a public official has a conflict of interest under section 87100 if (1) the official has a financial interest of the type delineated in section 87103, (2) "the effect of the governmental decision on the official's financial interest [is] reasonably foreseeable," (3) "the foreseeable effect of the governmental decision on the

12

[financial] interest [is] material," and (4) that effect is "distinguishable from its effect on the public generally." (*Consumers Union*, at pp. 443-444.) If a qualifying conflict exists, the public official is to disclose the conflict and recuse himself or herself (§ 87105); if that does not happen, a court "may"—but is not required to—"set the official action aside as void" (§ 91003, subd. (b); *All Towing Services LLC v. City of Orange* (2013) 220 Cal.App.4th 946, 957-958.)

Abercrombie's alleged role in negotiating the acquisition of Valencia while serving on the Agency's board of directors and serving as Valencia's general manager unquestionably meets three of the four prerequisites for qualifying as a conflict of interest under section 87100: (1) he was serving as a "director, officer, partner, trustee, employee, or . . . position of management" at Valencia (§ 87103, subd. (d)) and was drawing a salary as Valencia's general manager (§ 87103, subd. (c)), each of which constitutes a "financial interest" under section 87103; (2) Abercrombie's involvement in the negotiations qualifies as "participat[ion] in making a governmental decision" (2 Cal. Code Regs. § 18704.2, subd. (a); § 81014 [granting authority to promulgate regulations]), and the acquisition's effect on Abercrombie's financial interest in Valencia was reasonably foreseeable; and (3) the foreseeable effect of the acquisition on Abercrombie's interest in Valencia—both as its general manager and as a salaried employee—is material because Valencia was named as the respondent in the eminent domain proceeding and was a contracting party in its settlement (2 Cal. Code Regs., § 18702.3, subd. (a)(1)).

Although it is a closer question, the final prerequisite is also met because the effect of Valencia's acquisition *on Abercrombie* is "distinguishable from its effect on the public generally" within the meaning of section 87103. Because "[s]ection 87103 did not intend to abrogate . . . boards and commissions whose members are drawn from the same industry, trade or profession they affect (*Consumers Union*, *supra*, 82 Cal.App.3d at p. 448; accord, *Griffith v. Pajaro Valley Water Management Agency* (2013) 220 Cal.App.4th 586, 602-604 [applying this exception to water board member living within the agency's district]), the regulations implementing section 87103 specifically provide

13

that where the relevant governmental decision affects a "significant segment"—that is, at least 25 percent—of all business entities within the public agency's jurisdiction, and where "the law that establishes the board . . . requires certain appointees have a representative interest in particular industry, trade, or profession or other identified interest," then the effect of the decision on the appointed official will be deemed indistinguishable from its effect on the public if "the effect is on the industry, trade or profession or other identified interest represented and there is no unique effect on the official's interest." (2 Cal. Code Regs. § 18703, subds. (a), (b), (e)(5).)[4] In this case, the acquisition affects more than 25 percent of the purveyors regulated by the Agency because Valencia is one of three purveyors (that is, 33.3 percent), and the Agency's enabling legislation requires that each of the appointed directors represent one of the purveyors; indeed, the Legislature has declared that the Agency's appointed directors are "intended to represent and further the interest of the water industry within the boundaries of the agency, and that this representation . . . will ultimately serve the public interest." (Stats. 1986, ch. 832, § 5, p. 2843, Deering's Ann. Wat.—Uncod. Acts (2008 ed.) Act 130, § 5.3.) However, the acquisition will have a "unique effect" on Abercrombie, as a Valencia employee, as compared with its effect on the other purveyors he does not represent, and a unique effect on him, as Valencia's *general manager*, as compared with Valencia's other employees.

---

[4]     This regulation was promulgated during the pendency of this appeal, and subsequent to the Agency's action challenged on appeal. Although regulations that "substantially change[] the legal effect of past events" cannot be applied retroactively (*Union of American Physicians & Dentists v. Kizer* (1990) 223 Cal.App.3d 490, 504-505), section 18703 yields the same conclusion—and thus has the same legal effect—as the regulations it replaced. The prior regulations are the same as section 18703, except that they required (1) a Legislative declaration that the agency board members appointed from the industry also represent the public interest (which, as discussed above, is true in this case), and (2) the effect of the challenged action on the public official to be substantially the same as its effect on 50 percent of the people that the official represents (which, as discussed above, is not true in this case). (See 2 Cal Code Regs. §§ 18707.4 [repealed], 18707 [repealed], 18707.1, subd. (b)(1)(C) [repealed].)

Abercrombie nevertheless argues that the Agency's acquisition of Valencia is excepted from section 87100 because his participation was "legally required." The PRA exempts conflicts of interest where the public official's "participation is legally required for the action or decision to be made." (§ 87101; 2 Cal. Code Regs. § 18705, subd. (a).) This exception "ensures that essential governmental functions are performed even where a conflict of interest exists." (*Eldridge v. Sierra View Local Hosp. Dist.* (1990) 224 Cal.App.3d 311, 321 (*Eldridge*).) To apply, however, there must exist "no alternative source of decision" (2 Cal. Code Regs. § 18705, subd. (a)) and the agency or public official must "disclose the legal basis for concluding there is no alternative source of decision" (*id.*, subds. (b)(1) and (b)(3); *Kunec v. Brea Redevelopment Agency* (1997) 55 Cal.App.4th 511, 523 [so requiring]). An alternative source of decision exists when an agency can convene a quorum without the affected public official. (2 Cal.Code.Regs. § 18705, subd. (c)(2) [exception does not apply "if a quorum can be convened of other members of the agency who are not disqualified"]; *Eldridge*, at p. 322 [noting the same]; cf. *Brown v. Fair Political Practices Comm.* (2000) 84 Cal.App.4th 137, 145 [decision regarding a city's redevelopment plan cannot be made without participation of city's mayor, who is an "integral part" of proposing and approving city ordinances].) In this case, the Agency convened a quorum—and approved the acquisition of Valencia— without Abercrombie's participation. Although SCOPE alleges that the acquisition "might not have taken place if Abercrombie had not participated in the negotiations," this allegation does not establish that his participation was legally required, particularly in light of the conflict-free board's subsequent ratification of the negotiations. Also, neither the Agency nor Abercrombie spelled out why Abercrombie's participation was legally required. Consequently, this exception is unavailable.

Because Abercrombie's alleged participation in the negotiations leading up to the Agency's acquisition of Valencia falls under the auspices of section 87100, we must decide the following questions: (1) does section 15.2, subdivision (d)'s carve-out from section 1090 extend to section 87100 when the "financial interest" at stake in the "government decision" is an interest in a contract also covered by section 1090, and, if

so; (2) did the Legislature, in limiting section 87100's reach, comply with the special procedural requirements for amending a voter-enacted initiative?  Both are questions of law we review de novo.  (*American Nurses Assoc. v. Torlakson* (2013) 57 Cal.4th 570, 575.)

### A.      Does section 15.2, subdivision (d)'s exception from section 1090's prohibitions of conflicts involving certain contractual transactions also exempt those transactions from section 87100?

In assessing whether section 15.2, subdivision (d)'s express exception for contractual transactions barred by section 1090 implicitly excepts such transactions from section 87100 as well, we must ask two questions:  (1) is that what the Legislature intended?; and, if so, (2) is a court empowered to recognize an implicit exception to section 87100 to accommodate this legislative intent?

The first question is one of statutory construction, and our goal is "'to discern the probable intent of the Legislature so as to effectuate the purpose of the laws in question.' [Citation.]"  (*State Department of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 961 (*State Department*).)  Where, as here, the statutory language is genuinely ambiguous because it does not speak to the issue to be determined, we turn to the canons of statutory construction for guidance.  (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110; cf. *State Department*, at p. 956 [courts may only choose among plausible interpretations of a statute; they may not rewrite statutes].)  The parties direct us to dueling canons.

SCOPE points us to the canon of *expressio unius est exclusio alterius*—Latin for "if a statute specifies one exception to a general rule[,] other exceptions are excluded." (*Eldridge*, *supra*, 224 Cal.App.3d at p. 324.)  SCOPE notes that the Legislature excepted appointed directors from the conflict of interest prohibitions in section 1090 (§ 15.2, subd. (d)), and from the incompatible officers prohibitions in section 1125 et seq. (*Id.*, § 5.4), but elected *not* to except those directors from section 87100.  And this was no oversight, SCOPE argues, because the Legislature was aware enough of the PRA to declare that appointed directors were serving the public interest under the PRA (*Id.*,

16

§ 5.3). SCOPE further notes that reading section 15.2, subdivision (d) to create an exception to section 87100 would implicitly repeal part of section 87100, thereby violating the "well settled" canon "against repeal of a preexisting law by implication" (*Consumers Union*, *supra*, 82 Cal.App.3d at p. 445; *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1039).

Abercrombie responds that section 87100 and section 15.2, subdivision (d)'s exception from section 1090's conflict of interest restrictions are irreconcilable because the application of section 87100's more general prohibitions against *all* "governmental decisions" would render section 15.2, subdivision (d)'s exception for section 1090 (and section 1090's more specific prohibition of financial interests in contracts) ineffective. This result, Abercrombie contends, is at odds with several canons of statutory construction—namely, that courts should "harmoniz[e] potentially inconsistent statutes" (*State Department*, *supra*, 60 Cal.4th at p. 955); that courts should avoid an interpretation amounting to a proclamation that the Legislature "engaged in an idle act" by enacting a wholly ineffectual statutory provision (*People v. Correa* (2012) 54 Cal.4th 331, 348-349); and that, where a conflict between statutes exists, the more specific statute—here, the Agency's enabling legislation—should trump the more general (*Honig*, *supra*, 48 Cal.App.4th at pp. 328-329).

Although we agree with SCOPE that the Legislature's silence in section 15.2, subdivision (d) counsels against implying an exception to section 87100, we nevertheless conclude that Abercrombie's interpretation is more consonant with the relevant canons and with the Legislature's overall intent. If section 15.2, subdivision (d), is not read as carving out an exception to section 87100 for governmental decisions involved in making the contracts covered by section 1090, then section 15.2, subdivision (d) has no effect and the Legislature engaged in an idle act in enacting it. SCOPE resists this conclusion; it argues that section 15.2, subdivision (d) still has a purpose, even if section 87100 applies, because section 87100 only reaches (1) contracts having a "material" effect on a public official's financial interest, and some contracts—such as water resource plan contracts— will not be "material," and (2) "governmental decisions in which [the official] knows or

17

has reason to know he has a financial interest" (§ 87100). Such contracts, SCOPE reasons, would be outside the scope of section 87100 but within the scope of section 1090, leaving section 15.2, subdivision (d) some purpose in exempting them from section 1090. But the premise of SCOPE's arguments is invalid. To begin, water resource plan contracts will always be "material" under the PRA. That is because a contract is "material" under the PRA if it is "directed solely at the business entity in which the [public] official has an interest" (2 Cal.Code Regs. § 18702.1, subd. (a)(7)), or if the official's source of income is a "contracting party" (*id.*, § 18702.3, subd. (a)(1)). This will always be the case whenever a water resource plan contract is formed between the Agency and the purveyor in which the appointed director has an interest or is employed. Further, the PRA's scienter requirement will be met for every governmental decision covered by section 15.2, subdivision (d) because the PRA "presume[s]" that an official's financial interest is reasonably foreseeable whenever that interest "is a named party in, or the subject of, a governmental decision" (*id.*, § 18701, subd. (a)), and section 15.2, subdivision (d) only—and thus, *always*—applies to "contract[s] between a purveyor . . . and the [A]gency" (§ 15.2, subd. (d)).

Because giving effect to one statute (section 87100) would nullify the other (section 15.2, subdivision (d)), the two are irreconcilable. In this situation, we are to "where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions," even if it requires us to impliedly repeal a portion of one of the statutes. (*State Department*, *supra*, 60 Cal.4th at pp. 955-956; *Consumers Union*, *supra*, 82 Cal.App.3d at p. 445.) In reconciling, we are to give effect to the more specific statute (*State Department*, at pp. 960-961), which in this case is section 15.2, subdivision (d). Even if we were to accept SCOPE's argument that we should assess specificity as between section 1090 and section 87100, it is well settled that section 1090's focus on conflicts involving contracts is more specific than section 87100's broader proscription of conflicts involving any governmental decision. (*Honig*, *supra*, 48 Cal.App.4th at p. 329 ["Sections 1090 and

18

1097 are more specific than the conflict-of-interest provisions of the PRA"]; *Lexin*, *supra*, 47 Cal.4th at p. 1074 & fn. 12].)

More to the point, and as noted above, the conflict of interest provisions of the PRA are designed to ensure disclosure of the conflict (and, in some instances, recusal)—not to prohibit the participation of a regulated industry's constituents in the public agency charged with that regulation. (*Consumers Union*, *supra*, 82 Cal.App.3d at p. 448; § 87105; see also § 81002, subd. (c) [a purpose of the PRA is to assure that "assets and income of public officials which may be materially affected by their official actions should be disclosed and in appropriate circumstances the officials should be disqualified from acting in order that conflicts of interest may be avoided"].) Because section 15.2, subdivision (d) applies only if the appointed director discloses his interest in the purveyor, an interpretation extending section 15.2, subdivision (d)'s exception from section 1090's provisions to contracts that would otherwise be barred by section 87100 is the one that best harmonizes the Legislature's intent to ensure the disclosure of conflicts *and* permit regulated industry participation. It is accordingly the interpretation we will adopt.

In light of this conclusion, we are empowered to construe section 15.2, subdivision (d) as creating an implied exception to section 87100. Courts may imply an exception when necessary to harmonize two irreconcilable statutes (*State Department*, *supra*, 60 Cal.4th at p. 956) or when necessary to ensure the Legislature does not enact a nullity (*People v. Pieters* (1991) 52 Cal.3d 894, 902). This case involves both scenarios. SCOPE contends that the trial court impermissibly invoked the "in pari materia" canon of statutory construction—which requires statutes dealing with the same subject matter to be construed similarly (*Lexin*, *supra*, 47 Cal.4th at pp. 1090-1091)—to imply an exception to section 87100 just because section 15.2, subdivision (d) expressly carved out an exception to section 1090. We need not consider whether the "in pari materia" doctrine authorizes a court to imply exceptions because the trial court ultimately rested its ruling on its concern that refusing to imply an exception to section 87100 leaves section 15.2, subdivision (d) no effect. Moreover, as we note above, there is ample authority to imply

19

an exception in this case; the trial court's potential invocation of a different basis—even if impermissible—does not invalidate its correct result. (See *People v. Bryant, Smith & Wheeler* (2014) 60 Cal.4th 335, 364-365 ["'On appeal we consider the correctness of the trial court's ruling *itself,* not the correctness of the trial court's *reasons* for reaching its decision'"].)

### B.    Did the Legislature Comply with the Special Requirements For Amending the PRA

Because the PRA was enacted into law through the voter initiative process, it may only be amended by a further voter initiative or by the terms set forth in the original, initiative-enacted law. (Cal. Const., art. 2, § 10, subd. (c) ["The Legislature . . . may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval"]; *Franchise Tax Bd. v. Cory* (1978) 80 Cal.App.3d 772, 776.) The PRA provides that it may be amended or repealed if (1) the new law was passed by a two-thirds majority of the Legislature, (2) the new law furthers the PRA's purposes, and (3) the Legislature delivers a copy of the final bill, at least 12 days prior to its passage, to the Fair Political Practices Commission and anyone else who requests a copy. (§ 81012; *Howard Jarvis Taxpayers Assn. v. Bowen* (2011) 192 Cal.App.4th 110, 116.)

SCOPE concedes that section 15.2, subdivision (d) was enacted by a two-thirds majority of the Legislature, but argues that this provision does not satisfy the remaining two prerequisites. SCOPE raises this argument for the first time on appeal. Although we generally decline to consider issues the trial court did not, we may nevertheless decide issues that involve solely a question of law and that are either pertinent to a proper disposition of the case or involve a matter of public importance. (*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 901, fn. 5.) These criteria are met here.

Section 15.2, subdivision (d) certainly amends or repeals section 87100 within the meaning of the provisions governing initiatives because it "add[s] or take[s] from" section 87100. (*People v. Cooper* (2002) 27 Cal.4th 38, 44; *People v. Kelly* (2010) 47 Cal.4th 1008, 1026-1027.) More specifically, section 15.2, subdivision (d) "takes away"

20

from section 87100's reach by immunizing the conflict of interest that would otherwise be proscribed by section 87100 when an appointed director of the Agency's board of directors has a financial interest in a contract that is covered by section 1090 (because, as we conclude above, section 15.2, subdivision (d) excepts such conflicts from both section 1090 and section 87100).

However, the Legislature satisfied the procedural requirements for this partial repeal and/or amendment of section 87100. As we discuss above, excepting conflicts of interest that would be prohibited under section 1090 from section 87100 as well furthers the PRA's purposes of ensuring the disclosure of conflicts of interest (and, on occasion, recusal from such conflicts) while at the same time permitting the continued participation of industry representatives in their own regulation by public agencies. (*Consumers Union*, *supra*, 82 Cal.App.3d at p. 448; §§ 87105, 81002, subd. (c).) We must also presume, in the absence of evidence to the contrary, that the Legislature complied with the relevant advance consultation and notice requirements. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"]; *Samson Market Co. v. Alcoholic Beverage Control Appeals Bd.* (1969) 71 Cal.2d 1215, 1223 [presuming that agency posted schedules prior to enacting law]; *San Joaquin River Exchange Contractors Water Auth. v. State Water Resources Control Bd.* (2010) 183 Cal.App.4th 1110, 1135 [presuming that agency engaged in interagency consultation prior to acting].) SCOPE argues that AB 3762's bill history does not reflect preenactment transmission of the bill to the Fair Political Practices Commission, but this history is a log of how the bill moved through the Legislature, not a list of the people and entities with which the Legislature communicated regarding the bill. It consequently does not rebut the presumption that the Legislature properly discharged its official duty to notify the Commission as required by law.

In sum, section 15.2, subdivision (d), was a properly enacted amendment to section 87100. The trial court was accordingly correct in concluding that section 15.2, subdivision (d) carves out an exception to section 87100 that reaches as far as its

exception from section 1090 liability, and that this exception exempts Abercrombie from liability under section 87100.

## DISPOSITION

The judgment is affirmed.  Abercrombie is entitled to costs on appeal.

## <u>CERTIFIED FOR PUBLICATION</u>.

_____, J.

HOFFSTADT

We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ