Filed 10/7/24  Belna v. Rutan & Tucker LLP CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JAMES M. BELNA, | B336127 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV22179) |
| v. | |
| RUTAN & TUCKER LLP, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Affirmed.

James M. Belna, in pro. per., for Plaintiff and Appellant.

Loeb & Loeb and W. Allan Edmiston for Defendant and Respondent.

Plaintiff James M. Belna appeals from a judgment of dismissal following a successful demurrer to his complaint brought by defendant Rutan & Tucker LLP (Rutan). He contends the complaint alleges sufficient facts to support his claim that Rutan violated the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.)[1] by participating in a Claremont City Council (the City Council) meeting as the interim City Attorney and influencing the City Council's decision to award Rutan the City Attorney legal services contract. We affirm because plaintiff has not alleged sufficient facts to show a violation of section 87100.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

## I.     Rutan's Appointment as Claremont's City Attorney

Best, Best and Krieger (BBK) served as the City Attorney for the City of Claremont (the City) for many years. In late 2016, BBK represented the City in an eminent domain lawsuit through which the City sought to acquire the local water system. The City lost the lawsuit, and BBK represented the City on appeal. While the appeal was pending, the City engaged Rutan "to attempt to negotiate a consensual purchase of the water system." When that effort failed, the City engaged Rutan to negotiate a settlement of the eminent domain appeal in October 2017. BBK then resigned as City Attorney.

---

[1]     All undesignated statutory references are to the Government Code.

[2]     Consistent with the applicable standard of review, we draw our statement of facts, including quoting occasionally, from the allegations of the complaint. (*Rallo v. O'Brian* (2020) 52 Cal.App.5th 997, 1002.)

2

In November 2017, the City engaged Rutan to serve as City Attorney in an interim capacity while it searched for a permanent replacement. "At the end of the search process, the Council identified six law firms which it deemed qualified to serve as City Attorney. From these six firms, the Council chose Rutan. During the regularly scheduled [C]ity [C]ouncil meeting on March 13, 2018, the Council formally considered the approval of a [l]egal [s]ervices [a]greement under which Rutan would serve as the permanent City Attorney."

Before the City Council's vote on the legal services agreement, members of the public were invited to comment. Plaintiff, a resident of Claremont, California, objected to the legal services agreement with Rutan. Plaintiff thought the City should pursue a malpractice lawsuit against BBK for bringing and losing the eminent domain case, and he asserted that Rutan was unqualified to advise the City on such matters because Rutan served as co-counsel with BBK in the eminent domain case. Plaintiff also told the City Council that because "Rutan had a financial interest in the agreement under consideration, the firm could not participate in the Council's decision-making process in any way; and that if the Council wanted further guidance concerning the [p]laintiff's claim that Rutan had a conflict of interest with respect to potential legal action against BBK, the Council needed to retain a non-Rutan attorney to provide that guidance."

Jeffrey Oderman, a partner in the Rutan firm who had been designated by Rutan to serve as the interim City Attorney, was present at the March 13th meeting in that capacity. Following plaintiff's comments, one of the Council members asked Oderman if there was any merit to plaintiff's conflict of

3

interest objection.  Oderman responded that he "was (temporarily) not the City Attorney; that he was not providing legal advice to the Council; that he had a conflict of interest providing legal advice to the Council with regard to the agreement under consideration; and that if the Council wished to obtain legal advice to address [p]laintiff's concerns, the Council would have to find another attorney to do so."

"Oderman then proceeded to tell the Council that 'speaking as sort of an applicant before you' – and not as the City Attorney – he did not agree at all that there was any conflict of interest because of a potential claim that the City may make against BBK."  "Another council member then asked Mr. Oderman if he agreed that the City could not pursue legal action against BBK until after the [California Fair Political Practices Commission (FPPC)] completed its investigation and issued a decision.  After again stating that he was not speaking as the City Attorney, he responded that he absolutely agreed with that contention."[3]

The City Council then unanimously approved the legal services agreement, appointing Rutan as the permanent City Attorney.

---

[3]      "Plaintiff filed a complaint with the [FPPC] . . . in which he alleged that BBK had violated conflict of interest laws by participating in the City Council's decision to initiate the eminent domain with the foreknowledge that BBK would be able to collect millions of dollars in litigation fees if the Council approved the takeover attempt."  After investigating, in July 2018, the FPPC "closed its investigation of [p]laintiff's complaint and took no action against BBK."

4

## II.    Plaintiff's Lawsuit

In July 2022, plaintiff sued Rutan, alleging a single cause of action for violation of section 87100.  Section 87100 states: "A public official at any level of state or local government shall not make, participate in making, or in any way attempt to use the public official's official position to influence a governmental decision in which the official knows or has reason to know the official has a financial interest."  Plaintiff asserts that Rutan, as acting interim City Attorney, was a public official under section 87200, and it knowingly used its official position to influence the City Council's decision in its favor to secure the City Attorney legal services agreement at the March 13, 2018 City Council meeting.

Plaintiff alleges that "Rutan has billed and collected more than $1 million for services rendered to the City under the [legal services agreement]."  Plaintiff prayed for a final judgment ordering Rutan "to pay damages of three times the amount of economic benefit realized by [Rutan]," with half of those damages paid to plaintiff pursuant to sections 91005, subdivision (b), and 91009.

## III.    Demurrer

Rutan demurred to the complaint.  Rutan argued that it did not violate section 87100 because it expressly represented itself, not the City, when it responded to plaintiff's objections at the City Council meeting.  Rutan also asserted its commentary at the City Council meeting was related to terms of its employment and therefore was authorized by California Code of Regulations, title 2, section 18704 (2CCR § 18704), subdivision (d)(3).

Rutan also argued its public comment was statutorily protected by section 87105, which allows a public official with a

financial interest in a decision to participate in public comment after the official has made appropriate disclosures. Rutan asserted it made such disclosures and thus could respond to plaintiff's objection.

Plaintiff opposed the demurrer, arguing that Rutan participated at the meeting in its official capacity as interim City Attorney and therefore was not free to participate as a member of the public. Plaintiff asserted that Rutan's commentary at the meeting had nothing to do with its compensation or terms and conditions of its employment because the sole "interchange" alleged between Oderman and the City Council was about plaintiff's objection to Rutan's asserted conflict of interest. Plaintiff also argued that Rutan failed to comply with section 87105 such that it could participate in public comment.

The trial court sustained the demurrer without leave to amend. Citing 2CCR section 18704, subdivision (d)(3), the trial court found that "it is apparent from the face of the Complaint that [Rutan] did not violate Government Code section 87100 because it was commenting on matters concerning its own employment or compensation, or the terms, conditions, or circumstances of its employment, in response to specific questions from official decision makers, in this case, the Council." The court also agreed with Rutan that under section 87105, it could participate in the City Council meeting as it had because Oderman disclosed the potential conflict of interest and then responded to questions about the conflict of interest only as an applicant on behalf of Rutan and not in the capacity of a public official.

6

Plaintiff moved for reconsideration of the court's order sustaining the demurrer without leave to amend. The trial court denied the motion.

In December 2023, the court entered a judgment of dismissal in favor of Rutan and against plaintiff. Plaintiff timely appealed.

## DISCUSSION

Plaintiff argues he sufficiently alleged the elements of a section 87100 violation, and the trial court abused its discretion in denying leave to amend. We disagree.

## I.  Standard of Review

"We review an order sustaining a demurrer de novo, applying our independent judgment to assess whether the complaint states a cause of action. (*Minton v. Dignity Health* (2019) 39 Cal.App.5th 1155, 1161 [].) We assume the truth of all properly pleaded facts, as well as all facts that may be implied or reasonably inferred from those expressly alleged, but we do not assume the truth of contentions, deductions, or conclusions of fact or law." (*Sonoma Luxury Resort LLC v. California Regional Water Quality Control Bd.* (2023) 96 Cal.App.5th 935, 940.) "We also 'consider judicially noticed matters.' " (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1315.)

" 'In order to prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error. Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer.' " (*Save Lafayette Trees v. East Bay Regional Park Dist.* (2021) 66 Cal.App.5th 21, 35.)

7

Whether the trial court should have granted leave to amend "is reviewed under the abuse of discretion standard, although error is shown if there is any reasonable probability an amendment that cures the defect can be made.  Appellants bear the burden on appeal of showing a reasonable possibility exists that the complaint can be successfully amended."  (*Fischer v. Time Warner Cable Inc.* (2015) 234 Cal.App.4th 784, 790.)

## II.    Applicable Law

The voters adopted the Political Reform Act (PRA) in 1974 through the passage of Proposition 9.  (*Consumers Union of U.S., Inc. v. California Milk Producers Advisory Bd.* (1978) 82 Cal.App.3d 433, 436.)  As relevant here, section 87100 provides that "a public official at any level of state or local government shall not make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."  A public official has a financial interest in a decision "if it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally."  (§ 87103; see also *Santa Clarita Organization for Planning & the Environment v. Abercrombie* (2015) 240 Cal.App.4th 300, 313–314.)  However, notwithstanding section 87100, a public official who has a financial interest in a governmental decision may "speak on the issue during the time that the general public speaks on the issue" if the public official does all of the following:  "(1) [p]ublicly identif[ies] the financial interest that gives rise to the conflict of interest or potential conflict of interest"; "(2) [r]ecuse[s] the public official's own self from discussing and voting on the matter, or otherwise acting in violation of Section 87100"; and "(3) [l]eave[s] the room until after

8

the discussion, vote, and any other disposition of the matter is concluded." (§ 87105.)

Pursuant to the PRA's implementing regulations,[4] a "public official participates in a governmental decision if the official provides information, an opinion, or a recommendation for the purpose of affecting the decision without significant intervening substantive review." (2CCR § 18704, subd. (b).) A public official "uses an official position to influence a governmental decision" if the official "(1) Contacts or appears before any official in the official's agency or in an agency subject to the authority or budgetary control of the official's agency for the purpose of affecting a decision; or [¶] (2) Contacts or appears before any official in any other government agency for the purpose of affecting a decision, and the public official acts or purports to act within the official's authority or on behalf of the official's agency in making the contact." (*Id.*, subd. (c)(1)–(2).) However, "[m]aking, participating in, or influencing a governmental decision does not include" "[a]ctions by a public official relating to compensation or the terms or conditions of the official's employment or consulting contract." (*Id.*, subd. (d)(3).)

A member of the public may bring a civil action against "[a]ny designated employee or public official specified in Section 87200, except an elected state officer, who realizes an economic benefit as a result of a violation of Section 87100 or of a

---

[4]    The FPPC "has primary responsibility for the impartial, effective administration and implementation" of the PRA. (§ 83111; see § 83116 [proceedings by the FPPC when there is probable cause of a PRA violation].)  The FPPC "may adopt, amend and rescind rules and regulations to carry out the purposes and provisions" of the PRA.  (§ 83112.)

9

disqualification provision of a conflict of interest code." (§ 91005, subd. (b).) A public official may be liable in such an action "for an amount up to three times the value of the benefit." (*Ibid.*) If a judgment is entered under this section, "the plaintiff shall receive fifty percent of the amount recovered" and "[t]he remaining fifty percent shall be deposited in the General Fund of the state." (§ 91009.)

## III. Plaintiff Failed to Allege a Violation of Section 87100

Plaintiff contends he sufficiently alleged a violation of section 87100. As mentioned above, to state a claim under section 87100, plaintiff must have alleged that (1) Rutan was a public official and (2) participated in or attempted to use its official position to influence a governmental decision, (3) in which it knew it had a financial interest. (§ 87100.)

Elements one and three are clearly alleged. The complaint alleged that Rutan was the interim City Attorney, who is a "public official" pursuant to section 87200. The complaint also alleged that Rutan had a known financial interest in the City Council's decision to award Rutan the permanent City Attorney position. Specifically, the complaint alleged that plaintiff informed Oderman that Rutan had a financial interest in the agreement under consideration, and Oderman acknowledged Rutan's conflict of interest by indicating he was not speaking as City Attorney but as an applicant.

As to the second (and final) element, i.e. that Rutan participated in or influenced the making of the governmental decision, plaintiff alleged that at the March 13, 2018 City Council meeting, in response to a Council member's request for comment, Rutan partner Oderman voiced his opinion that Rutan did not have a conflict of interest in representing the City as the City

Attorney based on its relationship as former co-counsel with BBK. Rutan argues that Oderman's comments at the City Council meeting did not constitute making, participating in, or influencing a governmental decision because the comments related to the terms or conditions of Rutan's employment or consulting contract within the meaning of 2CCR section 18704, subdivision (d)(3). Rutan contends Oderman's statement that Rutan had no conflict of interest "represented an essential dialogue between a lawyer and a prospective client regarding a foundational aspect of the proposed engagement. And it obviously related to, and potentially impacted, the terms of the proposed [l]egal [s]ervices [a]greement. If Rutan had a genuine conflict of interest, that conflict would have required Rutan to disclose the 'relevant circumstances' and 'material risks' of the conflict and proposed representation, and then obtain Claremont's informed written consent thereto. [Citations.] A genuine conflict may also have required some express limitation on Rutan's role or the scope of its responsibilities as they were defined in the proposed [l]egal [s]ervices [a]greement. (*Id.*)"

We agree that Oderman's verbal assurance to the City Council that there was no conflict of interest was an action "relating to . . . the terms or conditions of [Rutan]'s employment or consulting contract." (See 2CCR § 18704, subd. (d)(3).) As Rutan points out, lawyers are subject to special rules of professional responsibility and conduct, under which lawyers owe their clients a duty of loyalty. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 282.) Where there is a conflict of interest, an attorney must make appropriate disclosures and obtain informed written consent from the client. (*Ibid.*; Rules Prof. Conduct, rule 1.7 [requiring "informed written consent" from client if "there is a

11

significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with" others].)  As the existence of a conflict of interest would impact the scope of Rutan's representation and perhaps influence whether Rutan could represent the City at all, Oderman's statements were unquestionably related to the terms and conditions of the legal services agreement, which was a proposed employment or consulting contract within the meaning of the regulations.  We therefore conclude Rutan did not violate section 87100 when speaking on that issue at the City Council meeting.[5]

---

[5]     We note that there are few cases applying section 87100 and none that deal with whether a public official's action is related to its terms and conditions of employment pursuant to 2CCR section 18704, subdivision (d)(3).  Both parties cite *Campagna, supra,* 42 Cal.App.4th 533 for support, but we do not find *Campagna* instructive.  In *Campagna*, a city contracted with an attorney for the provision of certain legal services as a deputy city attorney.  (*Id.* at p. 536.)  The attorney then retained an outside law firm to litigate on a contingency fee basis on the city's behalf; the attorney also negotiated a separate oral agreement, the "referral fee agreement," with the outside law firm whereby his firm would receive a percentage of the total contingency fee.  (*Ibid.*)  Before the underlying litigation went to trial, the city asserted it was unlawful for the attorney to have an interest in the contract that he negotiated on behalf of the city in his official capacity.  After the underlying litigation settled, the city insisted that the attorney not be paid his share of the fee.  The attorney sued for declaratory relief.  (*Id.* at pp. 536–537.)  A judgment for the attorney was reversed on appeal.  The appellate court concluded the attorney acted as a private attorney in negotiating the contingency fee between his firm and the city, but acted in an

12

Plaintiff argues we should not apply 2CCR section 18704, subdivision (d)(3) here because doing so would frustrate the purpose of section 87100.  We disagree.  "[T]he whole purpose of the Political Reform Act of 1974 is to preclude a government official from participating in decisions where it appears he may not be totally objective because the outcome will likely benefit a corporation or individual by whom he is also employed."  (*Witt v. Morrow* (1977) 70 Cal.App.3d 817, 822–823.)  The exception embodied by 2CCR section 18704, subdivision (d)(3) does not undermine that objective, but rather permits employees to communicate with employers about terms and conditions of employment.  That is exactly what is alleged to have occurred at the City Council meeting in response to plaintiff's objection.

Plaintiff also argues that Rutan improperly raised an affirmative defense on demurrer by arguing the exception under 2CCR section 18704, subdivision (d)(3).  In support, plaintiff cites *G.H.I.I. v. MTS, Inc.* (1983) 147 Cal.App.3d 256, 273 (*G.H.I.I.*) for the proposition that at this stage of proceedings, he was not required to affirmatively disclaim that Rutan was not acting in relation to a term or condition of its employment.

*G.H.I.I.* is inapposite.  There, plaintiffs sued defendants for " 'locality discrimination' " under section 17040 of the Business and Professions Code—that is, for selling or furnishing an article

---

official capacity in choosing the associated firm and negotiating the referral fee agreement with it, rendering him liable under section 1090.  (*Id.* at pp. 541–542.)  Not only does *Campagna* not address a violation of section 87100, but it does not address the issue at the heart of this appeal:  whether Rutan's denial of a conflict of interest at the City Council meeting was related to the terms and conditions of its employment as City Attorney.

or product at a lower price in one location than in another. Significantly, section 17041 of the Business and Professions Code permitted such discrimination if allowances were made for "grade, quality, quantity or cost of transportation." (*Id.* at p. 272.) On demurrer, defendants challenged the locality discrimination cause of action as "vague and defective for *lack of essential allegations* that the price differences cited were not justified by such differences in grade, quality, quantity or cost of transportation." (*Ibid.*, italics added.) The appellate court concluded plaintiffs were not required to plead that the price differences were not justified by grade, quality, quantity, or cost of transportation as required by the second statute. The court explained the plaintiff need only plead facts in support of each of the requirements of a statute upon which a cause of action is based, and need not plead facts negating exceptions to liability found in subsequent sections of the act. (*Id.* at p. 273)

*G.H.I.I.* does not support plaintiff's argument. We are not concluding, nor is Rutan arguing, that plaintiff failed to plead facts to negate an exception to liability under section 87100. Our decision is not based on a *lack* of essential allegations. Rather, we conclude plaintiff's allegations demonstrate that Rutan's conduct was not actionable under section 87100 as a matter of law. Accordingly, the trial court properly sustained Rutan's demurrer to the complaint.

## IV. The Trial Court Did Not Abuse Its Discretion in Denying Leave to Amend

Plaintiff asserts the trial court abused its discretion in denying leave to amend the complaint. In his motion for

14

reconsideration,[6] plaintiff proposed amending the complaint with the following facts: (1) "The Permanent Legal Services Contract was negotiated, published, and publicly disseminated on March 8, 2018 – five days before the March 13, 2018 Council Meeting"; (2) "The question posed to Mr. Oderman by the Council did not relate to Defendant's compensation or any of the terms and conditions of the contract"; (3) "Mr. Oderman did not speak during the time set aside for public comment"; and (4) "Neither Defendant nor Mr. Oderman had a personal interest in the legal services contract as defined in" 2CCR section 18704, subdivision (d)(2).

None of these factual allegations remedy the defect in this case by showing Rutan participated in or influenced a governmental decision pursuant to section 87100. The first, third, and fourth facts are not relevant to showing that Rutan influenced or participated in the City Council's decision. The second "fact" is a legal conclusion, not a factual allegation, expressly contradictory to our legal analysis of the complaint and relevant law. This legal conclusion likewise fails to remedy the complaint's deficiency. (See *Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1238 [court assumes the truth of the allegations in the complaint, but not the truth of contentions, deductions, or conclusions of law].)

---

[6]     Plaintiff asserts that prior to the trial court sustaining the demurrer, he was not given an opportunity to address how he could amend the complaint and therefore he filed the motion for reconsideration stating these additional facts he could allege to amend his complaint.

15

Plaintiff does not assert any other amendments would cure the deficient complaint. As such, we conclude there was no abuse of discretion in denying leave to amend.

### DISPOSITION

The judgment is affirmed. Defendant and respondent Rutan & Tucker LLP is awarded its costs on appeal.


EDMON, P. J.


We concur:



EGERTON, J.



ADAMS, J.

16